Lucy Thompson *et al.*, plaintiffs in error, *vs.* Andrew J. Kimbrel *et al.*, defendants in error.

1. The records of the Court of Ordinary are amendable so as to make them speak the truth, upon the proper steps being taken for that purpose.  The fact that the Court had no jurisdiction to grant the order, which it is proposed to amend, cannot affect the motion to amend.   If the jurisdiction did not exist, parties whose interests may be affected by the judgment can take advantage of the want of jurisdiction as well after as before the amendment, whenever and wherever it interferes with their rights.

2. Upon a motion to amend the records of the Court of Ordinary, the only issue before the Court, is whether the amendment proposed will make the record speak the truth. Whether the original order was legally passed or not is irrelevant and impertinent to the issue. Nor can such order, if illegal, be set aside in this proceeding. The case is not altered where the motion is to rescind an order allowing the amendment.

3. An amendment of its records by the Court of Ordinary, upon an *ex parte* application, cannot affect the rights of any persons not parties to the proceedings. But if such persons afterwards come into Court and move to rescind the order of amendment, and upon hearing all the parties, it appears that the amendment was a proper one to be made, the order granting it should be permitted to stand.

Amendment. Jurisdiction. Court of Ordinary. Practice. Before Judge HARRELL. Miller Superior Court. April Term, 1872.

Lucy Thompson and others, the heirs-at-law of Seaborn Thompson, filed their petition, returnable to the April Term, 1871, of the Court of Ordinary of Miller county, setting forth, substantially, the following facts: That at the March Term, 1870, of said Court, upon the application of A. J. Kimbrel *et al.*, said Court granted an order amending an order passed at the December Term, 1858, authorizing Wilson Thompson, as administrator upon the estate of Seaborn Thompson, deceased, to sell the negroes of said estate, by inserting in said order, immediately after the word " negroes," the words " and lands ;" that petitioners pray said order may be set aside for the following reasons, to-wit:

1st. Because they had no notice of such application or action of the Court.

2d. Because said amendment was made twelve years after the granting of the original order.

3d. Because there was no evidence to sustain such amendment.

4th. Because such amendment was procured by fraud.

The same parties filed a second petition, returnable to the October Term, 1871, alleging, substantially, as follows: That

at the December Term, 1858, of said Court, the following order was passed, to-wit:

" Whereas, Wilson Thompson, as administrator upon the estate of Seaborn Thompson, deceased, late of said county, having applied to the Court for leave to sell the land and negroes belonging to said estate, and said application having been advertised according to law, and no objection having been filed, it is therefore ordered by the Court that said Wilson Thompson, administrator as aforesaid, proceed to sell, at public outcry, the negroes belonging to the estate of said deceased."

That the lands belonging to said estate were sold illegally, and without authority of law, on the first Tuesday in January, 1859; that on December 29th, 1869, petitioners brought ejectment to recover said lands; that at the March Term, 1870, of said Court of Ordinary, Andrew J. Kimbrel *et al.*, the defendants in ejectment, procured an order amending said original order so as to include the lands; that said order was passed without notice to petitioners, improvidently, illegally and without sufficient evidence.  Prayer: that said last order may be set aside.

That at the February Term, 1871, said defendants procured an order as follows, to-wit:

" It appearing to the Court that, at the October Term, 1857, of this Court, by Thomas S. Floyd, *ex officio* Ordinary, letters of administration on the estate of Seaborn Thompson were granted to Wilson Thompson; it further appearing that said letters of administration have been lost, and that the parties interested have used due diligence; sufficient evidence having been submitted of the above facts, it is therefore ordered by the Court that a copy of said lost original letters be established in lieu of the lost original."

That said order was passed without notice to petitioners, improvidently, illegally and without sufficient evidence; prayer, that the same may be set aside.

The motions contained in the foregoing petition were, at the February Term, 1872, overruled.  The petitioners ap-

pealed to the Superior Court. Upon the trial in that tribunal, the petitioners requested the Court to charge as follows, to-wit:

"If in an order to sell land there is an error, and no attempt is made by the parties interested to have it corrected until ten years afterwards, it is too late to make such correction, and an order correcting such supposed mistake is void and should be set aside."

The Court refused to give said request in charge, but charged the jury as follows, to-wit:

"That the Court of Ordinary had no power to establish letters of administration, therefore that question did not come before them; the only question for them to try, was whether the Ordinary had properly amended the records of his Court, in reference to the order allowing the administrator to sell the property of the deceased; that depended upon the evidence submitted to them as to the original passage of the order. If they believed, from the evidence, that the order, as originally passed, authorized the administrator to sell the lands, and that, by mistake, inadvertence, or any other cause, unmixed with fraud, the same was improperly recorded, the Ordinary, upon proper proof, had the power to and did properly correct the order. That if the original order, as passed, did not authorize the sale of the lands, the judgment of the Ordinary amending the record was wrong, and they should so find."

Under the decision of the Court an order was taken setting aside the judgment establishing the copy letters of administration. The jury returned a verdict in favor of the defendants.

The evidence is not necessary to an understanding of the decision of the Court, and is therefore not herein set forth.

The petitioners moved for a new trial, upon the following, among other grounds, to-wit:

Because the Court refused to charge as requested.

The motion for a new trial was overruled, and plaintiffs in error excepted, and assign said ruling as error.

Thompson *et al.* *vs.* Kimbrel *et al.*

J. E. Bower; E. C. Bower, for plaintiffs in error. Equity will not relieve where party is guilty of laches: Code, sec. 3070, *et seq.* Amendment of bill refused after five or six years: 9 Ga. R., 143. Judgment had in 1833 cannot be relieved against in 1847: 2 Ga. R., 346. Judgment for five years bars the right: 4 Ga. R., 57. Party must move to amend in the first instance: 1 Ga., 466; 13 Ga., 221. Eleven years after judgment too late to amend: 14 Ga., 592. Cannot amend the record at common law, after Term: 2 Smith's Leading Cases, 586, *et seq.*

J. A. & Isaac Bush; Hood & Kiddoo, for defendants. Records amendable so as to speak the truth: Code, sections 194, 3447, 3448.

Montgomery, Judge.

The order of the Ordinary establishing a copy of the lost letters of administration, having been set aside by the Superior Court, the only question left for this Court to consider is, was the amendment of the records of the Court of Ordinary, properly allowed? Section 3449, of the Code, gives a wide discretion to Courts in the allowing or refusing of amendments of their records. In all cases where such amendments will clearly be in furtherance of justice, the amendments should be allowed. To make the record show what actually took place, and speak the truth, we think is clearly within the rule.

It is argued that the original order which was amended is void, for want of jurisdiction in the Court, and therefore, the amendment should be rescinded. That cannot affect the question of amendment. Assuming that the Court had no jurisdiction to grant the order to sell the land, the parties complaining can take advantage of it as well after as before amendment, whenever, and wherever it conflicts with their rights: Code, 3536.

2. The sole question is upon a motion to amend a record so as to make it show what actually occurred, will the proposed

amendment make the record speak the truth? Whether the original order was legally passed or not, cannot, on such a motion, be considered. A motion to rescind an order allowing such an amendment has no wider scope. If it appear that the record, as amended, is false, the order allowing the amendment should be rescinded. The issse is narrowed to this inquiry.

3. When the amendment is allowed upon an *ex parte* application it cannot affect persons not parties to the proceedings. If they choose afterwards to come in and move a rescission of the amendment, they have the right to show, if they can, that the facts do not warrant the amendment; failing to make such a showing, and the amendment appearing a proper one, it should be sustained. This, of course, leaves the quesiton as to the validity of the judgment entirely untouched. If void, it is a nullity; if there is any ground for vacating it, that course is still open: *Walker vs. Scott,* 29 Ga., 397.

Judgment affirmed.